Harold Birns, J.
The defendant moves for an order sup *974 pressing certain items taken by the People from his apartment.
At a hearing on this motion the sole witness was Detective Malfer. He testified that on January 12, 1970 at 8:40 a.m. a robbery occurred at a gas station at 1895 First Avenue and the manager was shot and killed. Detective Malfer was assigned to this case on that day. On January 14, 1970, as a result of information obtained from eyewitnesses at the scene of the crime and other information presented to him, he learned the name of the defendant as the person who allegedly committed the crime. He also learned of defendant’s address.
On January 15, 1970, at approximately 7:30 in the morning, Detective Malfer and five other police officers and detectives went to the defendant’s apartment. Detective Malfer knocked on the door but there was no answer. However, the detective noticed a light coming from under the door and heard the radio playing. The detective attempted to open the door, which was constructed of metal, without success. The Police Emergency Services Division was summoned to open the door by force, which was. accomplished. Upon entering the apartment, the police officers did not find the defendant. However, in their search of the apartment the police confiscated a Winchester shotgun with 14 shells, found in a closet. Also seized were three photos of defendant in a ski mask and a bill of sale for the shotgun, found in a drawer. Detective Malfer also seized a .30 calibre Winchester casing, which lay on top of the stereo in the living room in "plain view.”
The police had neither an arrest nor search warrant at the time they entered the apartment. The District Attorney, however, asserts the presence of the police in the apartment was legal. Accordingly, the District Attorney maintains that the .30 calibre Winchester casing allegedly seen on the top of the stereo was in "plain view” and should not be suppressed. He concedes, however, that the items found in the closet and drawer should be suppressed.
At the time in question, January 15, 1970, the law applicable to the police conduct related above was governed by the Code of Criminal Procedure. Section 177 of the Code of Criminal Procedure as applicable to this case recited: "A peace officer may, without a warrant, arrest a person * * * 3. When a felony has in fact been committed, and he has reasonable cause for believing the person to be arrested to have commit *975 ted it”. Section 178 of the Code of Criminal Procedure provided: "To make an arrest, as provided in the last section [177], the officer may break open an outer or inner door or window of a building, if, after notice of his office and purpose, he be refused admittance.”
It is abundantly clear from Detective Malfer’s testimony that a homicide had been committed, and the police had reasonable cause to believe that the defendant had committed the felony.
Although Detective Malfer knocked on the defendant’s door, it is not established that at this time he announced that his purpose was to arrest the defendant. Such a declaration of purpose is unnecessary when exigent circumstances are present (People v Wojciechowski, 31 AD2d 658; People v McIlwain, 28 AD2d 711).
"Case law has made exceptions from the statute or common-law rules for exigent circumstances which may allow dispensation with the notice * * * It has also been held or suggested that notice is not required if there is reason to believe that it will allow an escape or increase unreasonably the physical risk to the police or to innocent persons”. (People v Floyd, 26 NY2d 558, 562.)
The facts of this matter indicate that a grave offense had been committed; that the suspect was reasonably believed to be armed and could be a danger to the community; that a clear showing of probable cause existed and that there was strong reason to believe that the suspect was in the premises being entered and that he would escape if not swiftly apprehended. From this fact the court finds that exigent circumstances existed to justify noncompliance with section 178. The court holds, therefore, that the entry into defendant’s apartment was valid.
There is also no lack of cases to substantiate the People’s argument that any evidence in plain view might properly be seized (Ker v California, 374 US 23; Coolidge v New Hampshire, 403 US 443; People v Ball, 41 AD2d 689). The observation of the shell casing, under the circumstances, was inadvertent.
The court rules that the Winchester shotgun, serial number 085194, and a bandolier with 14 shells found in a closet, and the three photos of the defendant in a ski mask, and a bill of sale for the shotgun found in a drawer are suppressed. The *976 court finds, however, that the .30 calibre Winchester casing found in plain view should not be suppressed.